JUDGE CROTTY

Cheryl J. Scarboro
Reid A. Muoio (RM 2274)
Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-6030
(tel) 202/551-4403 (Scarboro)

AUG 07 2007
U.S.D.C. S.D. N.Y.
CASHIERS

07 CV 7039

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - x
                                        )
SECURITIES AND EXCHANGE COMMISSION,     )
                                        )
                Plaintiff,              )
        v.                              )
                                        )   **COMPLAINT**
FIRST BANCORP,                          )
                                        )   07 Civ.
                Defendant.              )
                                        )
- - - - - - - - - - - - - - - - - - - - x

Plaintiff Securities and Exchange Commission (the "SEC") alleges as follows:

### NATURE OF THE ACTION

1.  The SEC brings this financial fraud action against First BanCorp, a NYSE-listed Puerto Rican bank holding company. Former senior management of First BanCorp concealed the true nature of over $4 billion worth of mortgage-related transactions from its independent auditor and the investing public between 2000 and 2005. First BanCorp, which purportedly purchased the mortgages, profited from these transactions by earning over $100 million in net interest income at little or no risk. The contra-party to the transactions, Doral Financial Corporation, which purportedly sold the mortgages to First BanCorp, improperly

recognized income on these transactions during the relevant period. Former First BanCorp senior management also created and backdated certain documents and affirmatively misrepresented the terms of certain mortgage-related transactions to its independent auditor to avoid a restatement in November 2004.

2.  Since learning of the fraud, First BanCorp's board of directors brought in a new management team, restated the company's financials, unwound the underlying transactions and took other significant remedial action. The latter includes entering into consent orders with the Board of Governors of the Federal Reserve System and the Federal Deposit Insurance Corporation, conducting an internal investigation and cooperating with law enforcement.

## JURISDICTION

3.  This Court has jurisdiction over this action pursuant to Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(e) and 78aa]. First BanCorp has, directly or indirectly, made use of the means or instrumentalities of interstate commerce and/or of the mails in connection with the transactions described in this Complaint.

## DEFENDANT

4.  First BanCorp is the second largest financial holding company in Puerto Rico. First BanCorp provides commercial banking services through a network of offices in

Puerto Rico and the U.S. Virgin Islands. First BanCorp reported total assets of $17.4 billion as of September 30, 2006. First BanCorp's common stock is registered with the SEC pursuant to Section 12(b) of the Exchange Act and is listed on the New York Stock Exchange. There were approximately 80 million shares outstanding as of June 30, 2005. The company's fiscal year ends December 31.

### SUBSTANTIVE ALLEGATIONS

5. Between November 1999 and March 2005, First BanCorp entered into over $4 billion of mortgage-related transactions with Doral Financial, whereby First BanCorp purported to purchase mortgages from Doral Financial. Most of the mortgage loans were "non-conforming" residential mortgages. The balance was commercial mortgages. For most of the mortgages, the prices paid by First BanCorp were the principal amounts of the mortgage loans.

6. The written agreements for the mortgage-related transactions with Doral Financial included recourse provisions. The written recourse provisions provided that Doral Financial would either repurchase or substitute mortgages that became 120 days or more delinquent within the first 24-month period after the purchase, with a limit on the repurchase obligation related to commercial mortgage loans of no more than 10% of the principal amount.

7. Doral Financial retained the servicing on all of the mortgage loans at issue and agreed to remit to First BanCorp scheduled principal payments and, with respect to most of the transactions, interest calculated at a variable rate between 120 and 152 basis points over three-month LIBOR.

8. The mortgage-related transactions with Doral Financial generated enormous profits to First BanCorp in the form of net interest income at little or no risk. There was essentially no interest rate risk because First BanCorp financed the transactions at a variable rate of close to LIBOR. This meant that First BanCorp effectively locked in a spread of between 120-and-152 basis points.

9. There was little or no credit risk because senior management of Doral Financial agreed orally and in emails to extend the recourse provisions beyond the 24-month period included in the written agreements to recourse for the duration of the mortgage loans. Neither the existence nor the terms of the full recourse arrangement with Doral Financial were appropriately documented in First BanCorp and Doral Financial's accounting records.

10. Senior management of Doral Financial concealed the oral agreement for full recourse from its independent auditor, among others, so that it could improperly recognize gain on sale from the mortgage-related transactions with First BanCorp. Senior management of First BanCorp,

including the company's former Chief Executive Officer ("CEO"), and its former Chief Financial Officer ("CFO"), also concealed the oral agreement for full recourse from its independent auditor. The mortgage-related transactions were not true sales under generally accepted accounting principles because of the full recourse agreement. Doral Financial improperly recognized income on the mortgage-related transactions with First BanCorp.

11. First BanCorp had previously reflected the mortgage-related transactions with Doral Financial as purchases in bulk of mortgage loans. In December 2005, First BanCorp concluded that those transactions did not qualify as true sales for accounting purposes. The restated financial statements reflected the transactions as commercial loans secured by mortgages. The impact of the revised classification was to reduce real estate loans and to increase commercial loans secured by mortgages by the same amounts. There was no adjustment to net income related to the mortgage-related transactions.

12. First BanCorp has begun the process of effectively unwinding the mortgage-related transactions with Doral Financial. In May 2006, First BanCorp received a cash payment from Doral Financial of approximately $2.4 billion, which substantially reduced the balance of approximately $2.9 billion in reclassified secured commercial loans outstanding to Doral Financial. The cash payments reduced

the remaining balance of commercial loans to Doral Financial to approximately $450 million. First BanCorp expects additional accelerated payments by Doral Financial, which will further reduce the outstanding balance.

13. During the second half of 2004, First BanCorp senior management was informed that the company needed to account for a derivative created by the uncapped variable interest rate feature associated with the mortgage-related transactions with Doral Financial and another Puerto Rican financial institution, R&G Financial Corp ("R&G"), and that doing so could require a restatement of First BanCorp's historical financials.

14. In an initial effort to avoid a restatement, First BanCorp's former CEO, former CFO and former Executive Vice President ("EVP") of Retail and Mortgage Banking created and backdated purported hedging documents intended to make it appear to the company's independent auditor that they were created at the inception of the mortgage-related transactions. First BanCorp senior management intended for this deception to avoid a restatement by satisfying certain requirements for hedge accounting under Statement of Financial Accounting Standards No. 133, "Accounting for Derivative Instruments and Hedging Activities" ("SFAS 133").

15. Despite those efforts, First BanCorp's independent auditor did not agree that hedge accounting could be used to account for the uncapped variable interest rate feature. In

a further effort to avoid accounting for a derivative and restating the company's financials, First BanCorp senior management asserted falsely to the company's independent auditor that the parties to the mortgage-related transactions had agreed orally at the time of the original negotiation of the mortgage-related transactions that the variable interest rates provided for in the agreements were capped at the weighted average coupon ("WAC") of the related mortgage loans.

16. At the request of First BanCorp's independent auditor, this assertion was confirmed in writing with the counterparties. False and misleading written confirmations were executed by First BanCorp's former CEO, former CFO and former EVP and by executives of Doral Financial and R&G. Based on the foregoing and the receipt of a legal opinion issued by outside counsel that oral agreements were enforceable under Puerto Rico law, First BanCorp took the position that the variable interest rate feature did not create a derivative, and the company's independent auditor concurred, as a result of which there was no restatement.

### FIRST CLAIM FOR RELIEF

(Violations of Section 10(b) and
Rule 10b-5 of the Exchange Act)

17. Plaintiff SEC hereby incorporates ¶¶ 1 through 16 with the same force and effect as if set out here.

18. In the manner described in ¶¶ 1 through 17, Doral Financial, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce or of the mails, directly or indirectly (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts or omissions of material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in transactions, practices or courses of business which operated or would operate as a fraud or deceit upon persons, in violation of Section 10(b) of the Exchange Act [15 U.S.C § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] promulgated thereunder, and First BanCorp aided and abetted those violations pursuant to Section 20(e) of the Exchange Act [15 U.S.C. §78t(e)].

### SECOND CLAIM FOR RELIEF

**(Violations of the Reporting Provisions of the Exchange Act)**

19. Plaintiff SEC hereby incorporates ¶¶ 1 through 18 with the same force and effect as if set out here.

20. In the manner described in ¶¶ 1 through 19, Doral Financial violated Sections 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Rules 12b-20, 13a-1 and 13a-13 promulgated there under [17 C.F.R. §§ 240.12b-20, 240.13a-1], by filing reports with the SEC that inaccurately

reflected the company's financial performance and provided other untrue and inaccurate information to the public, and First BanCorp aided and abetted those violations pursuant to Section 20(e) of the Exchange Act [15 U.S.C. §78t(e)].

### THIRD CLAIM FOR RELIEF

**(Violations of the Books and Records and Internal Control Provisions of the Exchange Act)**

21. Plaintiff SEC hereby incorporates ¶¶ 1 through 20 with the same force and effect as if set out here.

22. In the manner described in ¶¶ 1 through 21, Doral Financial failed to make and keep accurate books and records and to devise and maintain an adequate system of internal accounting controls in violation of Section 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)], and First BanCorp aided and abetted those violations pursuant to Section 20(e) of the Exchange Act [15 U.S.C. §78t(e)].

### PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that this Court enter a judgment:

(i) permanently enjoining defendant First BanCorp, and its officers, agents, servants, employees, attorneys, and those in active concert or participation with it who receive actual notice by personal service or otherwise, from violating and Sections 10(b), 13(a), 13(b)(2)(A) and

13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Rules 10b-5, 12b-20, 13a-1 and 13a-13 [17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1 and 240.13a-13], promulgated thereunder;

(ii) ordering defendant First BanCorp to disgorge all ill-gotten gains from the conduct alleged herein, with prejudgment interest;

(iii) ordering defendant First BanCorp to pay civil money penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

(iv) granting such other relief as this Court may deem just and appropriate.

Dated: August 7, 2007

/s/ Reid A. Muoio

Cheryl J. Scarboro
Reid A. Muoio (RM 2274)
Attorneys for Plaintiff
Securities and Exchange
   Commission
100 F Street, N.E.
Washington, D.C. 20549-6030
(tel) 202/551-4403 (Scarboro)